UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAUL CORONEL SUAREZ, GUSTAVO GARCIA, LORENZO GARCIA JR., and JOSE SALDANA,<br><br>Defendants. | Case No. 24-cr-226-BLF<br><br>**ORDER DENYING WITHOUT PREJUDICE DEFENDANTS' MOTION TO PRECLUDE THE GOVERNMENT FROM WITHDRAWING ITS NOTICE THAT IT WOULD NOT SEEK THE DEATH PENALTY; AND SETTING DEADLINE OF AUGUST 14, 2025 FOR THE GOVERNMENT TO FILE ANY NOTICE OF INTENT TO SEEK THE DEATH PENALTY**<br><br>[Re: ECF 248] |

Early in these proceedings, the United States formally filed a Notice of Intent Not to Seek the Death Penalty as to Defendants Raul Coronel Suarez, Gustavo Garcia, Lorenzo Garcia Jr., and Jose Saldana. *See* No-Seek Notice, ECF 144. The Court and Defendants have proceeded in this case in reliance on that notice. Since then, and only very recently, the Government informed Defendants that it is reviewing its no-seek decision pursuant to a nationwide directive from Attorney General Pamela Bondi to review every decision not to seek the death penalty that was made under the prior administration. Defendants were advised that the Attorney General's Capital Review Committee will meet regarding them on August 13, 2025.[1]

---

[1] The Government is conducting a review as to three of the four defendants named in the No-Seek Notice, Suarez, Lorenzo Garcia, and Saldana, but not as to the fourth defendant, Gustavo Garcia, who was a minor when the relevant events occurred. Gustavo Garcia nonetheless has joined in the motion filed by his co-defendants. For ease of reference, the Court refers to all of the moving parties as "Defendants" without drawing a distinction based on Gustavo Garcia's different circumstances.

1   On July 3, 2025, Defendants filed a Motion to Preclude the Government from
2   Withdrawing its Notice that it Would Not Seek the Death Penalty. *See* Defs.' Mot., ECF 248.
3   Pursuant to the expedited briefing and hearing schedule set by the Court, the Government filed an
4   opposition on July 10, 2025, and Defendants filed a reply on July 14, 2025. *See* Gov't's Opp.,
5   ECF 257; Defs.' Reply, ECF 260. The Court heard oral argument on July 15, 2025.

Defendants' motion is DENIED WITHOUT PREJUDICE for the reasons discussed below.

At the hearing, Defendants requested that if the Court is not inclined to grant Defendants' motion, the Court instead set a deadline for the Government to file any notice of intent to seek the death penalty. Defendants suggested a deadline of July 28, 2025, while the Government requested that any deadline be after the Capital Review Committee meeting on August 13, 2025.

The Court HEREBY SETS a deadline of August 14, 2025 for the Government to file a notice that it intends to seek the penalty, if it decides to do so.

## I. BACKGROUND

On April 18, 2024, a grand jury issued a single-count indictment charging Defendants, along with eight co-defendants, with racketeering conspiracy under 18 U.S.C. § 1962(d). *See* Indictment, ECF 1. Defendants and co-defendants are alleged to be members and associates of the Salinas Acosta Plaza Norteño gang, a criminal street gang. *See id.* ¶ 11. The overt acts alleged to have been taken in furtherance of the racketeering conspiracy include two murders. Gustavo Garcia and Lorenzo Garcia are alleged to have murdered a man perceived to be associated with a rival gang by shooting him on July 19, 2014. *See id.* ¶ 15(d). Suarez and Saldana are alleged to have murdered a man perceived to have dropped out of the criminal enterprise by shooting him on December 2, 2023. *See id.* ¶ 15(ii). Those two murders were also charged as special sentencing factors against Gustavo Garcia and Lorenzo Garcia for the 2014 murder, *see id.* ¶ 16, and against Suarez and Saldana for the 2023 murder, *see id.* ¶ 17.

The penalty sheets appended to the indictment listed the maximum penalty for Defendants as life imprisonment. *See* Indictment Penalty Sheets, ECF 1. On July 16, 2024, the Government filed a No-Seek Notice advising that it would not seek the death penalty as to Defendants. *See* No-Seek Notice, ECF 144.

On January 20, 2025, President Trump issued Executive Order 14164, "Restoring the Death Penalty and Protecting Public Safety," which directs the Attorney General to "pursu[e] the death penalty where possible." EO 14164 at 1, ECF 248-2. On February 5, 2025, Attorney General Bondi issued a Memorandum requiring the Attorney General's Capital Review Committee to review no-seek decisions in all pending capital-eligible cases charged between January 20, 2021 and January 19, 2025. *See* Bondi Mem. at 3, ECF 248-1.

Defendants represent that on June 16, 2025, eleven months after the Government filed its No-Seek Notice in this case, they were informed via email that the Government is reviewing its no-seek decision. *See* Defs.' Mot. at 2-3. Defendants' cases will be reviewed by the full Capital Review Committee on August 13, 2025. *See id.* at 5. Defendants have been offered an opportunity to make a mitigation presentation prior to that meeting. *See id.* at 2, 5.

## II. DISCUSSION

Defendants ask the Court to "enter an order prohibiting the government from withdrawing its notice that it would not seek the death penalty" as to each of them. Defs.' Mot. at 7. Defendants assert five bases for relief. First, they contend that the No-Seek Notice filed by the Government in this case is irrevocable under Ninth Circuit precedent. Second, Defendants argue that judicial estoppel precludes the Government from seeking the death penalty. Third, they argue that any Government notice to seek death in this case would violate 18 U.S.C. § 3593. Fourth, Defendants assert that the No-Seek Notice filed by the Government affirmatively waived the Government's right to seek the death penalty under 18 U.S.C. § 3593(a). Fifth and finally, Defendants argue that CJA funding has been depleted for fiscal year 2025, and that without funding it would be impossible for Defendants to make a competent mitigation presentation to the Capital Review Committee even if the deadline to do so were a reasonable one (and Defendants contend it is not).

In opposition, the Government contends as a threshold matter that Defendants' motion is not ripe. *See* Gov't's Opp. at 4. Given that the No-Seek Notice has not been withdrawn, and may never be withdrawn, the Government argues that Defendants are seeking an advisory opinion on a hypothetical scenario. The Government also argues that if the Court were to reach the merits of

Defendants' arguments, prosecutorial discretion and the specific circumstances of this case support the Government's right to seek the death penalty in a superseding indictment.

### A. Defendants' Motion is Not Ripe

While Defendants have raised issues in their motion that the Court takes very seriously, the Court agrees with the Government that Defendants' motion is premature.

"Ripeness is an Article III doctrine designed to ensure that courts adjudicate live cases or controversies and do not 'issue advisory opinions [or] declare rights in hypothetical cases.'" *Bishop Paiute Tribe v. Inyo Cnty.*, 863 F.3d 1144, 1153 (9th Cir. 2017) (quoting *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000)). "The rule against advisory opinions is the oldest and most consistent thread in the federal law of justiciability." *Ctr. for Biological Diversity v. U.S. Forest Serv.*, 925 F.3d 1041, 1047 (9th Cir. 2019) (internal quotation marks and citation omitted). "[A]voidance of premature adjudication" prevents courts from "becoming entangled in 'abstract disagreements.'" *Wolfson v. Brammer*, 616 F.3d 1045, 1057 (9th Cir. 2010) (citation omitted).

A case must satisfy two requirements in order to avoid violating the prohibition on advisory opinions and present a justiciable dispute. First, the case must present "an honest and actual antagonistic assertion of rights by one [party] against another." *Ctr. for Biological Diversity*, 925 F.3d at 1047 (quoting *U.S. Nat'l Bank v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 446 (1993)). Second, the Court "must be empowered to issue a decision that serves as more than an advisement or recommendation." *Id.* at 1048. Advisory opinions involve "advance expressions of legal judgment" where issues lack "clear concreteness." *U.S. v. Fruehauf*, 365 U.S. 146, 157 (1961).

Given the procedural posture of this case, the Court finds that an order granting Defendants' motion would constitute an advisory opinion because the issues raised by Defendants lack the requisite concreteness. The Government has not decided that it will seek the death penalty for Defendants, and it may never do so. The Government represents that review of other cases in this district has resulted in the no-seek decision being left undisturbed. *See* Gov't's Opp. at 5. There is no record evidence suggesting that Defendants were singled out, or that it is any

4

1   more likely the No-Seek Notice will be withdrawn in this case than in other cases. To the
2   contrary, it appears that the No-Seek Notice in this case is being reviewed along with dozens of
3   other no-seek decisions pursuant to Attorney General Bondi's nationwide directive.
4          The cases in which the district court reached the merits of arguments like those raised by
5   Defendants are factually distinguishable. For example, in both *Spurlock* and *Constanza-*
6   *Galdomez*, the government had already filed a notice of intent to seek the death penalty. *See*
7   *United States v. Spurlock*, No. 3:23-CR-00022-MMD-CLB-1, 2025 WL 1360499, at *10 (D. Nev.
8   May 9, 2025); *United States v. Constanza-Galdomez*, No. CR SAG-22-409, 2025 WL 1712436, at
9   5-6 (D. Md. June 18, 2025). The issue before the district court in each case was whether the
10  government's notice of intent to seek the death penalty should be stricken as untimely, estopped,
11  or barred on other grounds. *See Spurlock*, 2025 WL 1360499, at *10; *Constanza-Galdomez*, 2025
12  WL 1712436, at 5-6. This Court cannot conduct a similar analysis in the present case, because the
13  Government has not yet filed a notice of intent to seek the death penalty and, in fact, may never do
14  so.
15         *Dangleben* is the only case cited that was in a procedural posture akin to that of the present
16  case, in that the government had filed a no-seek notice and was considering whether to change
17  course and seek the death penalty. *See United States v. Dangleben*, No. 3:23-CR-0072, 2025 WL
18  1423842, at *1 (D.V.I. May 16, 2025). However, the motion before the district court was not a
19  defense motion to preclude the government from withdrawing its no-seek notice, but rather a
20  motion by the government for a stay of proceedings while it decided whether to seek the death
21  penalty. *See id.* The district court denied the government's motion for a stay. *See id.* While it
22  expressed reservations as to whether the government could amend its prior no-seek notice, the
23  court declined to address the merits of that issue. *See id.* at *6 n.7.
24         *Cole*, which was decided only days before the hearing on Defendants' motion in the
25  present case, also arose after the government had decided to review its prior no-seek decision but
26  before it had decided whether to seek the death penalty. *See United States v. Cole*, No. 2023-CR-
27  0016, 2025 WL 1918001, at *1 (D.V.I. July 11, 2025). The district court *sua sponte* set a deadline
28  for the government to file a notice informing the court that it would seek the death penalty. *See id.*

5

Reserving any decision on the validity of a notice to seek the death penalty, should one be filed, the district court outlined a number of issues that would be in play. *See id.* at *4.

Having considered these and the other authorities cited by the parties, the Court concludes that it must deny Defendants' motion as premature. If the Government were to seek the death penalty after filing a No-Seek Notice a year ago, it would have to take additional steps that would result in further factual development. Most obviously, the Government would have to obtain and file a superseding indictment alleging a capital-eligible offense. Absent the filing of a superseding indictment and notice of intent to seek the death penalty, the Court cannot evaluate the validity of such a notice.

Although the Court has concluded that it cannot provide the relief requested at this point, it is important to address the significance of a number of issues raised by Defendants. It is the Government that has injected uncertainty into this case more than a year after filing its No-Seek Notice by signaling that it can seek the death penalty upon any or no showing of good cause. It is the Government that has left defense counsel to guess what charges might be brought as they prepare mitigation reports. And it is the Government that has compelled defense counsel to expend an extraordinary amount of resources at a time it knows there is no funding available to pay for Defendants' constitutionally protected right to counsel.

With all of this in mind, the Court advises the parties that whether the No-Seek Notice is revocable remains an important issue in this case. It is expected that the deadline imposed by this order will allow these issues to be fully adjudicated or rendered unnecessary so that the case can continue to resolution.

Accordingly, Defendants' motion for an order precluding the Government from withdrawing its No-Seek Notice is DENIED as premature.

**B.     Deadline for Government to Advise Whether it Will Seek the Death Penalty**

Although it finds Defendants' motion to be premature, the Court recognizes the difficult situation the Government's conduct has created for Defendants and the serious issues Defendants have raised as to the validity of any notice to seek the death penalty the Government may file. The Government has put this case in limbo. Despite the fact that the indictment was filed a year ago,

1    Defendants still do not know if they are trying a capital case. And, under the Government's view,
2    Defendants may not know that until the first day of trial, because the Government appears to
3    believe that it has an unfettered right to change its mind at any time. Moreover, Defendants have
4    been given the opportunity to make a mitigation presentation under time constraints that arguably
5    render that opportunity meaningless.

6    Under these circumstances, the Court finds it appropriate to set a deadline for the
7    Government to file a notice of intent to seek the death penalty. The Court emphasizes that it has
8    no intention of interfering with the internal processes of the executive branch. "[T]he Court has
9    not sought to impose deadlines on the timing of inter-agency deliberations," and Defendants have
10   not asked it to do so. *Spurlock*, 2025 WL 1360499, at *14. Setting a deadline for the Government
11   to inform the Court of the outcome of its deliberations is well within the Court's discretion. *See*
12   *Dangleben*, 2025 WL 1423842, at *4 (recognizing "the district courts' broad, inherent power to
13   control their dockets, to manage cases effectively, and to ensure obedience to their orders")
14   (internal quotation marks and citation omitted).

15   At the hearing, Defendants suggested a deadline of July 28, 2025. The Government
16   advised the Court that it did not expect to be able to obtain a superseding indictment before
17   September, and asked that its deadline be extended in consideration of that fact. The
18   Government's request is wholly unreasonable given that any delay in obtaining a superseding
19   indictment is of its own making. The United States Attorney has been on notice since January 20,
20   2025 that the President ordered the Attorney General to review all no-seek decisions of the prior
21   administration. The United States Attorney has had ample time to obtain a superseding
22   indictment.

23   As a fallback, the Government asks that the deadline be set after the Capital Review
24   Committee meeting scheduled for August 13, 2025. That modest extension beyond Defendants'
25   requested deadline of July 28, 2025 is reasonable. The Government's deadline to file a notice of
26   intent to seek the death penalty will be set on August 14, 2025.

27   During the hearing, a concern was raised that the Court's setting of a deadline for the
28   Government to file a notice of intent to seek the death penalty could be viewed as a judicial

7

determination that the No-Seek Notice is revocable, thus barring Defendants' argument that the No-Seek Notice is irrevocable. The Court's setting of a deadline for the Government to advise whether it will seek the death penalty is in no way intended to be, and is not, a determination that the No-Seek Notice is revocable.

The Court HEREBY SETS a deadline of August 14, 2025 for the Government to file a notice that it intends to seek the penalty, if it decides to do so.

### III.   ORDER

(1)   Defendants' motion is DENIED.

(2)   The Court HEREBY SETS a deadline of August 14, 2025 for the Government to file a notice that it intends to seek the penalty, if it decides to do so.

(3)   This order terminates ECF 248.

Dated: July 18, 2025

BETH LABSON FREEMAN
United States District Judge