**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAUL CORONEL SUAREZ,<br>LORENZO GARCIA, JR.,<br>JOSE SALDANA,<br><br>Defendants. | Case No. 5:24-cr-00226-BLF<br><br>**ORDER GRANTING DEFENDANTS' JOINT MOTION TO TERMINATE THE APPOINTMENTS OF LEARNED COUNSEL ON THE GROUND THAT THIS CASE IS NO LONGER A CAPITAL CASE**<br><br>[Re: ECF No. 290] |

On July 16, 2024, the United States formally filed a Notice of Intent Not to Seek the Death Penalty as to Defendants Raul Coronel Suarez, Lorenzo Garcia, Jr., and Jose Saldana ("Defendants"). *See* No-Seek Notice, ECF 144. Nearly one year later, on June 16, 2025, counsel for the Government abruptly informed Defendants that the Government intended to "reconsider" its earlier decision to not seek the death penalty in this case pursuant to a nationwide directive from Attorney General Pamela Bondi announcing the Government's policy to review every decision not to seek the death penalty made under the prior administration. *See* Defs.' Mot., ECF 248 at 2–3. On July 3, 2025, Defendants filed a Motion to Preclude the Government from Withdrawing its Notice that it Would Not Seek the Death Penalty. *See id.* After oral argument, the Court denied Defendants' motion on the ground that the motion was not ripe. *See* Order, ECF 264. Without deciding whether the Government's July 16, 2025, No-Seek Notice was revocable, the Court set a deadline of August 14, 2025, for the Government to file any notice of an intention to seek the death penalty. *See id.* at 7–8.

On August 13, 2025, the Government reaffirmed its position that it would not seek the

1  death penalty and thus did not file any notice of intent to seek the death penalty before the
2  August 14, 2025, deadline. *See* ECF 284. Defendants now move for the Court to terminate the
3  appointment of learned counsel on the ground that this case is no longer a death penalty case, or
4  alternatively, to allow for those appointments to continue for the remainder of the prosecution.
5  *See* Defs.' Mot., ECF 290 ("Mot."). The Government has not filed a brief opposing the motion. It
6  is clear to the Court based on the Government's actions throughout these proceedings that the
7  Government can no longer seek the death penalty in this case, such that the appointments of
8  learned counsel are no longer required under 18 U.S.C. § 3005. The Court finds this motion
9  suitable for resolution without oral argument and VACATES the hearing set for October 14, 2025.
10 *See* Civ. L.R. 7-1(b).

11 Defendants' motion to terminate the appointment of learned counsel is GRANTED.

12 **I.     BACKGROUND**

13 On April 18, 2024, a grand jury issued a single-count indictment charging eleven
14 defendants, including these three Defendants, with racketeering conspiracy in violation of 18
15 U.S.C. § 1962(d). *See* Indictment, ECF 1. Defendants are alleged to be members and associates
16 of the Salinas Acosta Plaza Norteño gang, a criminal street gang. *See id.* ¶ 11. The alleged overt
17 acts claimed to have been taken in furtherance of the racketeering conspiracy include two murders.
18 Lorenzo Garcia, Jr., is alleged to have murdered a man perceived to be associated with a rival
19 gang by shooting him on July 19, 2014. *See id.* ¶ 15(d). Mr. Suarez and Mr. Saldana are alleged
20 to have murdered a man perceived to have dropped out of the criminal enterprise by shooting him
21 on December 2, 2023. *See id.* ¶ 15(ii). The attachments to the indictment informed Defendants
22 that the maximum penalty they face is life imprisonment. The indictment does not charge a death
23 penalty-eligible crime. ECF 1-1.

24 On May 2, 2024, the Government informed the Magistrate Judge at arraignment
25 proceedings in the presence of Defendants that Defendants face a maximum sentence of life
26 imprisonment, and accordingly, the Magistrate Judge did not appoint learned counsel as required
27 in capital cases under 18 U.S.C. § 3005. On July 16, 2024, the United States publicly filed a No-
28 Seek Notice, informing the Court and Defendants that had elected not to seek the death penalty in

United States District Court
Northern District of California

1 this prosecution. *See* No-Seek Notice, ECF 144.

2       On January 20, 2025, President Trump issued Executive Order 14164, entitled "Restoring
3 the Death Penalty and Protecting Public Safety," which directs the Attorney General to "pursu[e]
4 the death penalty where possible." EO 14164 at 1, ECF 248-2. On February 5, 2025, Attorney
5 General Bondi issued a Memorandum requiring the Attorney General's Capital Review
6 Committee to review no-seek decisions in all pending capital-eligible cases charged between
7 January 20, 2021, and January 19, 2025. *See* Bondi Mem. at 3, ECF 248-1. The Memorandum
8 dictated that "[t]he review required . . . shall be completed within 120 days." *Id.* Under this self-
9 imposed deadline, the review of all prior no-seek cases, including the present case, should have
10 been completed by June 5, 2025.

11       On June 16, 2025—two weeks after the Government's self-imposed deadline and nearly
12 one year after the Government filed its No-Seek Notice in this case—Defendants were informed
13 by email that the Government had decided to "reconsider" its no-seek decision and that their cases
14 would be reviewed by the full Capital Review Committee on August 13, 2025. ECF 228 ¶ 4. On
15 June 17, 2025, the Court appointed Michael Burt as learned counsel for Mr. Suarez. ECF 299.
16 Shortly thereafter, the Court appointed John Philipsborn as learned counsel for Mr. Saldana and
17 Richard Novak as learned counsel for Mr. Garcia. ECF 240.

18       On July 3, 2025, Defendants filed a Motion to Preclude the Government from
19 Withdrawing its Notice that it Would Not Seek the Death Penalty. *See* Defs.' Mot., ECF 248.
20 Pursuant to the expedited briefing and hearing schedule set by the Court, the Government filed an
21 opposition on July 10, 2025, and Defendants filed a reply on July 14, 2025. *See* Gov't's Opp.,
22 ECF 257; Defs.' Reply, ECF 260. The Court heard oral argument on July 15, 2025, and denied
23 Defendants' motion on July 18, 2025, on the ground that, "[a]bsent the filing of a superseding
24 indictment and notice of intent to seek the death penalty," the motion was premature. Order,
25 ECF 264 at 6. Recognizing the difficult situation the Government's conduct created for
26 Defendants, the Court also set a deadline of August 14, 2025, for the Government to provide
27 notice to the Court and Defendants if it intended to pursue the death penalty as to Defendants. *See*
28 *id.* at 7.

1    On August 8, 2025, the Government moved to extend its August 14, 2025, deadline to
2 September 15, 2025, so that it could decide whether to seek a superseding indictment as to
3 Defendants. *See* Gov't's Mot., ECF 278. In its motion, the Government made no reference to the
4 Court's prior ruling on the issue, noting only that "[i]n light of the Court's deadline, the
5 government presently has only one week for the Capital Case Committee's recommendation to be
6 reviewed." *Id.* at 2. On August 13, 2025, just one day before the original deadline set by the
7 Court, the Government moved to withdraw the request for an extension, informing the Court and
8 Defendants that "the United States Attorney's Office was informed that the Attorney General is
9 maintaining the prior position not to seek the death penalty against Lorenzo Garcia, Raul Coronel,
10 and Jose Saldana." Gov't's Mot., ECF 284.

## II. DISCUSSION

Defendants now seek an order from the Court either continuing the appointments of their learned counsel for the remainder of this case or terminating the appointments on the ground that this is case is no longer a capital case. *See* Mot. at 1. The Court agrees with Defendants that this case is no longer a capital case for three independent reasons. First, the Government's representations throughout the course of these proceedings now estop the Government from seeking the death penalty as to Defendants. Second, principles of fairness as well as controlling Ninth Circuit precedent compel the conclusion that the Government's No-Seek Notices are irrevocable. Third, the Court already set a deadline for the Government to provide notice to the Court and Defendants if the Government intended to pursue the death penalty, and the Government provided no such notice by that deadline. Although the Court has not yet set a trial date in this case, the Court is satisfied based on these considerations that the Government has committed itself to its position not to seek the death penalty and, like any other party, is bound by its positions before the Court.

### A. Judicial Estoppel Precludes the Government from Seeking the Death Penalty

Defendants argue that the familiar doctrine of judicial estoppel precludes the Government from arbitrarily reversing course and seeking the death penalty as to Defendants after twice affirmatively representing to the Court and Defendants that it would not do so. *See* Mot. at 9.

4

1  Defendants urge that "[b]ecause the doctrine of judicial estoppel precludes the government from
2  seeking the death penalty in this case, the Court should rule that this case is no longer a capital
3  case" and terminate the appointments of learned counsel.  *Id.*  Based on the Government's July 16,
4  2024, No-Seek Notice and subsequent August 13, 2025, representation to the Court that the
5  Attorney General has decided to maintain the decision not to seek the death penalty, the Court
6  agrees with Defendants that the Government is estopped from seeking the death penalty and that
7  this is no longer a death penalty case.

        The doctrine of judicial estoppel is intended "to protect the integrity of the judicial process," by "prohibiting parties from deliberately changing positions according to the exigencies of the moment" and "playing fast and loose" with the courts.  *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001); *see also United States v. Garcia*, 37 F.3d 1359, 1366 (9th Cir.1994), *cert. denied*, 514 U.S. 1067 (1995) ("The doctrine of judicial estoppel is invoked to preclude a party from abusing the judicial process by taking inconsistent positions in the same litigation.").  The doctrine of judicial estoppel is ultimately rooted in principles of fairness of the judicial process and "is an equitable doctrine invoked by a court at its discretion."  *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990).  "Nevertheless, several factors typically inform the decision whether to apply the doctrine in a particular case:  First, a party's later position must be 'clearly inconsistent' with its earlier position.  Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled[.]' . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."  *New Hampshire v. Maine*, 532 U.S. at 750–51 (internal citations omitted).

        Each of these considerations weigh strongly in favor of applying judicial estoppel in this case.  *See United States v. Constanza-Galdomez*, No. CR SAG-22-409, 2025 WL 1712436, at *12–13 (D. Md. June 18, 2025) (determining that the government was estopped from seeking the death penalty after filing a No-Seek Notice based on the status of the proceedings).  First, the

Government's No-Seek Notice represented its position that it would not seek the death penalty, such that reversing course almost a year later and seeking the death penalty would self-evidently constitute taking diametrically opposed positions. Second, the Court accepted the Government's position, and the Court and its staff relied on that unequivocal representation in declining to appoint learned counsel and in making all future scheduling and funding decisions—were the Court to permit the Government to now seek the death penalty, it would in effect deny Defendants of months of trial preparation with learned counsel to which they would have otherwise been entitled. Finally, and most importantly, the Government would clearly receive an unfair benefit if not estopped because Defendants and their counsel detrimentally relied on the Government's prior decision not to seek the death penalty: "[E]very defense decision for the past . . . months of this case was in reliance on the government's decision not to seek the death penalty." Defs.' Mot., ECF 248 at 11. While the Court is mindful of the importance of the Government's discretion in prosecuting criminal offenses, it finds that allowing the Government to seek the death penalty in this case after twice affirmatively manifesting an intention not to do so would be gravely prejudicial to Defendants.

### B. The Government's Notice Not to Seek the Death Penalty is Irrevocable

The irrevocability of the Government's twice-made decision not to seek the death penalty is confirmed by the practical implications that would follow were the Court to determine that the Government is not bound by an earlier representation that it would not seek the death penalty. Were that the case, the Government's decision to file a No-Seek Notice would in effect be rendered meaningless, leaving open the possibility for the Government to at any time reverse course and seek the death penalty. The Court and Defendants would thus be forced to continue to treat any such prosecution as a potential death penalty case. This would put the defense in the unfair position of having to determine at each step of the proceedings whether to expend significant time and resources to anticipate a potential about-face by the Government, without the procedural and substantive protections offered to criminal defendants in cases where the Government has announced its intention to seek the death penalty.

Prior decisions of this Circuit clarify that there is no special exception for the Government

that permits it to avoid being bound by its representations in court like any other party. In *United States v. Waggoner*, the Ninth Circuit explained that, because the Government's decision not to seek the death penalty is "irrevocable," it has the effect of "eliminat[ing] [a defendant's] right under § 3005 to a second court-appointed counsel." 339 F.3d 915, 917–18 (9th Cir. 2003). This is because "after the government declare[s] that it [will] no longer seek the death penalty, the [defendants are] no longer capital defendants." *Id.* (quoting *United States v. Casseus*, 282 F.3d 253, 256 (3d Cir. 2002)). The Ninth Circuit has routinely held that in cases where the Government decides not to seek the death penalty it becomes "foreclosed . . . from seeking a death penalty," *United States v. Martinez*, 536 F.2d 886, 890 (9th Cir. 1976), making "the death penalty . . . impossible," *Loux v. United States*, 389 F.2d 911, 915 (9th Cir. 1968), *cert denied*, 393 U.S. 867 (1968). This is unsurprising, as the Government's decision whether to seek the death penalty is one of the most consequential forks in the road of any prosecution of a death-eligible offense and profoundly affects the nature of subsequent proceedings.

Relying on *Waggoner*, at least one other district court in this Circuit has concluded that the Government's decision not to seek the death penalty is irrevocable. *See United States v. Spurlock*, 782 F. Supp. 3d 987 (D. Nev. 2025), *appeal dismissed*, No. 25-3040, 2025 WL 2319947 (9th Cir. June 11, 2025). The Court agrees with the *Spurlock* court's explanation that permitting the Government to unilaterally change its position at any point in the proceedings "would clash . . . with the premise set out by the Ninth Circuit in *Waggoner*, that a defendant may be stripped of learned counsel once an 'irrevocable' no-seek notice is filed, leaving in limbo when and how district courts should address questions of defendants' entitlement to learned counsel." *Id.* at 1008. Because as a matter of Ninth Circuit law the Government's no-seek notice is irrevocable, the Court agrees with Defendants that this is no longer a death penalty case.

**C. The Government Has Not Complied with the Requirements of 18 U.S.C. § 3593**

Defendants also argue that any Notice to Seek Death filed in this case would violate 18 U.S.C. § 3593, which governs the Government's notice requirements when it elects to seek the death penalty in a given criminal prosecution. Mot. at 9–10. The Court agrees with Defendants. By its terms, 18 U.S.C. § 3593 does not permit the government to revisit a no-seek decision. But

7

even if the statute covers both no-seek and death notices, the government is required to seek leave of court to do so upon a showing of good cause. *Id.* § 3593(a)(2). The Government has not provided any reason why it would now be permitted to abruptly change its position after twice notifying the Court and the parties that it does not intend to seek the death penalty. Based on the substantial reliance interests at stake here, the Government's failure to provide any reason whatsoever justifying a last-minute change would preclude it from seeking the death penalty here.

### D. The Government's No-Seek Notices Affirmatively Waived the Government's Right to File a Notice to Seek the Death Penalty

Relatedly, Defendants argue that the Government is also precluded from now filing a notice under 18 U.S.C. § 3593(a) to seek the death penalty because it waived its right to file such a notice with its no-seek notices and because its delay of over a year in asserting that right would constitute forfeiture of that right. Mot. at 10. "No procedural principle is more familiar to this Court than that a constitutional right, or a right of any other sort, may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." *United States v. Olano*, 507 U.S. 725, 731 (1993) (internal quotation marks omitted). This rule applies to the Government. *See e.g.*, *Eberhart v. United States*, 546 U.S. 12, 19 (2005). "A party forfeits a right when it fails to make a timely assertion of that right and waives a right when it is intentionally relinquished or abandoned." *United States v. Kaplan*, 836 F.3d 1199, 1216 (9th Cir. 2016).

The Court agrees with Defendants. The Department of Justice's own Justice Manual indicates that the purpose of the no-seek notices filed by the Government was to communicate to the Court and Defendants that "the Attorney General has made the *final decision*" not to seek the death penalty. Justice Manual § 9-10.150 (emphasis added). The Government was fully aware of the weight that such a notice carries and at no point indicated an intention to deviate from its practice of ascribing finality to no-seek notices. Because more than a year has now passed since the Government's first no-seek notice, the Court agrees with Defendants that the Government has waived its right to seek the death penalty in this case.

8

**E. The Court's Scheduling Order Would Preclude a Death Penalty Notice**

Additionally, the Government can no longer file any notice to seek the death penalty because such a notice would violate the Court's August 14, 2025, deadline. *See, e.g.*, *Spurlock*, 782 F. Supp. 3d at 1007 (striking the government's notice to seek the death penalty filed after the court's deadline for filing such a notice). At the July 15, 2025, hearing, the Court made clear to the parties that this deadline was the Government's last opportunity to attempt to reverse course: "[I]f I set a deadline, I'm not setting a deadline that only pertains to the operative indictment, I'm setting a deadline for the case. . . . I want to be really clear that a deadline is a case deadline." Transcript of May 15, 2025, ECF 266 at 42. The Court further advised the parties that "whether the No-Seek Notice is revocable remains an important issue in this case" and that "[i]t [was] expected that the [August 14, 2025] deadline imposed . . . [would] allow these issues to be fully adjudicated or rendered unnecessary so that the case can continue to resolution." Order, ECF 264 at 6. That purpose could of course not be achieved if the Court did not enforce its deadlines.

The Court has inherent authority to manage cases and courtroom matters, including by ensuring obedience to orders. *United States v. W.R. Grace*, 526 F.3d 499, 508–09 (9th Cir. 2008) (en banc); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). In any event, the Government has not taken any action toward rescinding or modifying its prior No-Seek Notice, and has, as discussed above, reaffirmed its position that it does not intend to seek the death penalty. To the Court's knowledge, there have not been any case-specific developments or intervening changes in the law that would establish good cause for the Government to reverse its prior two positions, and the Government has not suggested otherwise. The Government has similarly not taken any actions toward seeking the death penalty, such as by obtaining superseding indictment.

\*   \*   \*

It is clear to the Court that this case cannot be a death penalty case based on the Government's affirmative decision to two times convey to the Court and Defendants that it will not seek the death penalty and by failing to provide notice of a change in position prior to the

Court's August 14, 2025, deadline.  Accordingly, the appointments of learned counsel in this case are no longer required.

**III.    ORDER**

(1) Defendants' motion to terminate the appointment of learned counsel is GRANTED.

(2) Michael Burt, John Philipsborn, and Richard Novak are relieved of their appointments.

(3) This order terminates ECF 290.

Dated:  September 23, 2025

_____
BETH LABSON FREEMAN
United States District Judge