GAIL R. SHIFMAN, SBN 147334
Law Office of Gail Shifman
2431 Fillmore Street
San Francisco, CA 94115
Phone: 415/551-1500
Email: gail@shifmangroup.com

MICHAEL N. BURT, SBN 83377
1000 Brannan Street, Suite 400
San Francisco, CA 94103
Phone: 415/522-1508
Email: mb@michaelburtlaw.com

**Attorneys for Defendant**
**RAUL CORONEL SUAREZ**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**RAUL CORONEL SUAREZ,**<br><br>**Defendant.**<br>___/ | **Case No. 5:24-CR-00226-BLF**<br><br>**DEFENDANT RAUL CORONEL SUAREZ' SENTENCING MEMORANDUM**<br><br>**Date: August 11, 2026**<br>**Time: 9:00 a.m.**<br>**Court: HON. BETH L. FREEMAN** |

Coming before the Court for sentencing is 22-year-old Raul Cornel Suarez ("Raul") following his plea of guilty to Count One of the Indictment, Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d). Raul asks the Court to impose a sentence of 30 years pursuant to the Rule 11(c)(1)(C) plea agreement and as recommended within the Pre-Sentence Report ("PSR").

Raul has no additional objections to the PSR other than as noted therein regarding the sentencing guideline calculation and submits on those issues awaiting the Court's ruling.

The offense conduct is detailed in Raul's admissions in the plea agreement, the PSR, and in the government's sentencing memorandum, Dkt. 565, primarily occurred when he was just 19 years old.

How he came to be involved can be seen developing out of a violent and abusive upbringing compounded by outright neglect and abandonment by his mother and father.

**A. A childhood of abandonment, neglect and abuse**

Raul was 'raised', if you will, by his mother and father until he was two or three years old. PSR ¶120. Abandoned by his mother as a toddler through his teenage years, Raul suffered through the neglect of his father and stepmother who chose not to feed or clothe him. PSR ¶121. His stepmother treated him with disdain and would tell Raul was "not her son" and that "he should leave the house." PSR ¶122. When he tried to tell his father about the verbal abuse and neglect, his father "always took her side because he was afraid of being alone." *Id.* Though he was a child seeking the protection and intervention of his father, in response his father also verbally abused Raul. *Id.* Raul also endured the physical abuse by his father who would hit him with a belt and leave marks on his body. *Id.* Raul became afraid to return home because he knew that his father would hit him. *Id.*

Not returning home put Raul on the streets of Salinas in a neighborhood with a high rate of crime and violence including gun violence and gang activity. PSR §123. This subjected Raul to the influences of gang members who became his surrogate family. At 13 years old, he witnessed a triple homicide after two people suddenly shot three others while Raul played marbles. *Id.* Soon after his father divorced his stepmother, at 15 years old, Raul went to juvenile hall as his father then fully abandoned Raul by moving to Mexico. *Id.* Raul then found himself moving around finding himself ultimately moving in with a friend from the neighborhood, a gang member. *Id.,* ¶119. As Raul's older half-brother Adan said, it was common that gang members would attempt to recruit "a kid that had a lot of time by himself." PSR ¶127.

Adan believes that Raul began association with his gang because their father did not pay attention to Raul and his mother was not in his life. *Id.* He also believes that Raul's behavior is largely based on who he is surrounded by and that he has seen Raul do well. *Id.* Demonstrating this, at the time of his arrest, Raul was attending school and working full-time. PSR ¶¶ 136, 140. He has expressed a desire to

continue his educational and vocational development while incarcerated to provide a better life for his son. PSR ¶ 125. Should the Court impose the sentence recommended by the parties and endorsed by probation, Raul will be 47 years old at the time of his release when he can put his educational and vocational development to use for himself, his son, and the community.

**B. Section 3553 Factors**

The Supreme Court has emphasized the need for individualized sentencing based not only on the crime, but on the defendant's particular circumstances. *See Pepper v. U.S.*, 131 S. Ct.1229 (2011). The Court must consider Mr. Cesena as an individual. *Gall v. United States*, 128 S. Ct. 586, 598 (2007) (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)). Under 18 U.S.C. § 3553(a), the Court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) . . . ." *United States v. Carty*, 520 F.3d 984, 989 (9th Cir. 2008).

18 U.S.C. § 3553(a) further directs sentencing courts to consider: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed; the kinds of sentences available; the sentencing range as calculated in Sentencing Guidelines, Sentencing Guidelines policy statements, the need to avoid unwanted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

**1. Disadvantaged Childhood and Lack of Guidance as a Youth**

The Ninth Circuit has determined that extraordinary childhood abuse and lack of guidance as a youth may be mitigating factors which render a defendant less culpable. *See, e.g. United States v. Floyd*, 945 F.2d 1096 (9th Cir. 1991); *United States v. Walter*, 256 F.3d 891 (9th Cir. 2001). Furthermore, in various contexts, courts have recognized that an individual's disadvantaged upbringing may be the basis for a lower sentence *See e.g. Landrigan v. Schriro*, 441 F.3d 638, 648 (9th Cir. 2006) ("Where a defendant's crime is attributable to a disadvantaged background or emotional or mental problems the

defendant is less culpable than one without the excuse."); *United States v. Genao*, 831 F. Supp. 246, 254 (S.D.N.Y. 1993)(courts should consider socio-economic and educational background of defendant). *See United States v. Ruiz*, 2009 WL 636543 (S.D.N.Y. March 11, 2009) (judge imposed 96 months rather than guideline range 140-175 months for crack offenses in part due to defendant's difficult childhood with abusive mother and largely absent father who was incarcerated and a heroin addict); *United States v. Patzer*, 548 F.Supp.2d 612 (N.D. Ill. 2008) (court imposed sentence of 13 years, despite Guidelines range of 346-411 months, finding that defendant's prior offenses designating him as a career offender were less serious than most of such offenses considered for purposes of that guideline, had difficult childhood, not property diagnosed with ADD, his conduct stemmed from mental health and drug problems that were treatable, and that he had potential for rehabilitation with support of friends and foster family).

**2. Consideration of Youth and Immaturity**

Youth and immaturity during the commission of an offense is a factor which may be considered under Section 3553(a) and as directed by *Gall v. United States*, *supra*, 128 S.Ct. at 593, 601. *See also Roper v. Simmons*, 125 S. Ct. 1183 (2005) ("today our society views juveniles, in the words *Atkins* used respecting the mentally retarded, as categorically less culpable than the average criminal . . . A lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young. These qualities often result in impetuous and ill-considered actions and decisions . . . The relevance of youth as a mitigating factor derives from the fact that the signature qualities of youth are transient; as individuals mature, the impetuousness and recklessness that may dominate in younger years can subside."); *United States v. Montanez*, 2007 WL 2318527 (E.D. Wis. Aug 9, 2007) (court departed based on overstated criminal history, good prison conduct, and noticeable increase in maturity).

The Sentencing Commission recognized neurological research that shows brain development is not fully realized in most people until they turn 25 years old. Researchers have found that the prefrontal

cortex of the brain – which "is utilized in impulse control, emotional reactions, executive function and decision making"-is the last part of the brain to develop. It "is not complete by the age of 18…development continues into the 20s" and most researchers reference 25 as the average age at which full development has taken place."[10] U.S. Sentencing Commission, "Youthful Offenders in the Federal System (May 2017)," p. 6, 7, *available at* http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170525_youthful-offenders.pdf. In other words, research shows that the brain of a defendant like Raul who commits a crime at the age of 19 is closer to the brain of a preteen than to the brain of most defendants convicted of federal offenses more generally.

**C. Conclusion**

Considering Raul's disadvantaged childhood marked by parental abandonment, domestic abuse, poverty, and poor neighborhood conditions, it is apparent that Raul lacked supportive adults in his life. He was exposed to crime and gang activity and predictably, he had early run-ins with the law. None of this excuses his criminal conduct that caused suffering and loss to others. It does, however, support the sentence that the parties recommend, 360 months.

Dated: August 4, 2026

Respectfully submitted,

*/s/ Gail Shifman*

Gail Shifman
Michael N. Burt

Attorneys for Defendant
RAUL CORONEL SUAREZ